When evaluating a defendant's competency to stand trial, the district court is required to take a hard look at the evidence. In this case, the district court did not take a hard look. In fact, it overlooked evidence that it was required to consider. Breyer. The district court did say it took a harder look than any other case for reports. The district court did suggest this was the closest look it had ever given this issue. Sonny Pervis Yes. And it assembled more reports and assembled more testimony than any other case that Judge Lake had heard before. But in looking over Judge Lake's memorandum opinion and order, we can see that he did not take into account some uncontradicted evidence, and he did not discount evidence that he was required to discount. For instance, it was uncontested that Gray's IQ fell within the impaired range. Dr. Chaffetz, the defense expert, testified that when he performed the full-scale inventory test, he obtained a result that he adjusted upwards based on the defendant's malingering. He already took into account what the other two experts had found, what the government expert had found, which was that he was malingering. He was deliberately trying to lower his scores to appear as though he did not qualify to stand trial. Dr. Chaffetz took that into account and provided a further adjustment upwards based on his own research, based on the defendant's malingering. Roberts. It's an unusual case where it's not even really a battle of the experts if no expert said he wasn't malingering. So it would be unusual to reward a defendant that all agree is malingering. Everyone agrees that he is malingering, but everyone also agrees that his IQ is within the range that the Supreme Court tells us is not — within the range that indicates that he suffers from a mental defect. Yes. What's your best case that the Hall-Moore line of Eighth Amendment jurisprudence controls a competency determination? There is not a case that says that those control a competency determination. What they do tell us is that the courts are to look to the current state of psychological science when evaluating whether or not a person qualifies under the law. The law follows the psychology and the science, not the other way around. So in this case, we know that Gray qualifies as having a mental impairment. Everyone agrees on that. It was plain error for Judge Lake to conclude in the face of even the government experts' agreement that Gray's IQ was within the range that would make him mentally impaired. Unfortunately, then, Judge Lake proceeded to disregard other evidence and did not explain why he credited the evidence and inferences that he reached in his conclusion in the memorandum opinion and order. He did not explain why he credited all of the inferences that would show that Gray was competent, that Gray was capable of explaining things to his attorney. He was capable of speaking with his attorney. Just on a hard record before us, though, there is an expert saying he's competent to stand trial. There is an expert saying he is competent to stand trial, but that notably was not included in her report. She did not opine on that until she was asked at the hearing whether or not he was competent to stand trial. If you look at Dr. Bella's report, she does not give an opinion on whether or not Gray can assist his lawyer or understand the proceedings that are going on. She specifically does not reach that conclusion. If you compare her report at Record 2543, she says that Gray is competent to stand trial, but if you offer an expert opinion testimony without an objection that it somehow wasn't given to you under 702, that would, you know, subject to cross-examination. There's nothing improper about her offering an opinion that you don't object to. No. And we're not saying that that is improper. What we are saying is that Judge Lake did not explain why he credited Bella's inferences as opposed to Chaffetz's inferences, where there are competing inferences that can be drawn from the information. It is incumbent upon the district court to explain itself. The hard-look standard that the courts have said says that the — What's the reversible error? The insufficiency of explanation, a case on competency, an Eighth Amendment case? What's the — what is your legal argument as to why there's a reversible error here? The reversible error is that Judge Lake did not sufficiently explain how he reached his — Is there a best case for that? The best case for that is — I'm going to mispronounce this, so I apologize. Scow — Skoo v. — In your brief. It's in the reply brief, Your Honor. Skoo v. United States, that's 526 Fed 2nd 293. That was a civil case. But in that case, the Court said that in reaching its findings of fact and conclusions of law, the district court was not allowed to disregard uncontested evidence in reaching its conclusion. And it did have to credit — it did have to explain why it drew the inferences that it drew in order for the court to affirm. In that case, the question was whether or not a charterer suffered a certain amount of damages. The district court said, well, they signed the charter anyway, so I'm going to rule that there are zero damages. What the — Would it be — just thinking, because your time's running out, if a defendant is smart enough to game IQ tests, wouldn't the inference be right there and then? He's understanding the proceedings well enough to try to beat them? That is one inference that can be drawn. It can be? Yes. That inference can be drawn. So how would it be clearly arbitrary to have relied on — The district court must explain why it is drawing that inference as opposed to the competing inferences. As we lay out in our brief, there are several inferences that can be drawn. Judge Lake specifically credited Gray's understanding of the criminal justice system as showing that he could assist with his defense. But the evidence he cited to show that he knew what was going on in the criminal justice system were simply things like he understood that some witnesses were going to testify for him, some against him. He understood that if you pay bail, you get out of jail. And he was able to divide by 10 and then divide by 2. If that — if he thinks that those are sufficient to show competency to stand trail, he must explain specifically why he is drawing one set of inferences as opposed to the other set of inferences. And we'll serve the remainder of time for rebuttal. Thank you, counsel. Mr. Tosk, is that correct, pronounced? Close enough, Your Honor. Close enough. You've been in front of me before. How do you pronounce that? Tosk, Your Honor. Ouch. First time in front of the Court, Your Honors. Okay. Your Honors, Justice Neal Gorsuch once said that an arbitrary law means an arbitrary application of that law. And this is what we're facing today, respectfully, with the case of Sonny Floyd Purvis. The issues we have, Your Honor, there are two main issues, as I've covered in my briefs. The first, Your Honor, is that after the Johnson line of cases and DeMaio, which I, of course, this Court is familiar with, the question becomes what is a crime of violence? The Johnson and DeMaio cases clearly enunciated that the residual clause of 16b is no longer considered a crime of violence. Now, of course, they apply that in the terms of the Immigration and Nationality Act of 1952 as amended. However, of course, it applies to the population in general. The issue here, and of course this Court is well aware that the Johnson case is very new, excuse me. However, in this case, the issue then becomes what about section 924C, which automatically bumped Sonny Floyd Purvis from a sentence of what could have been 10 years to a sentence of at least 30 years? The Court has been grappling since that time to view whether the 16b analysis applies to 924C. And as I've explained in my briefs, respectfully, it's our position that it does. Do you do think we decided Brewer incorrectly? Your Honor, incorrectly is perhaps too strong a word. But are you preserving that argument for en banc relief, or are you dodging? Respectfully, I'm preserving that for en banc relief, Your Honor, should it become necessary. Well, it is necessary, right? There's no other way to distinguish. I guess I will concede that, Your Honor. There is no other way to approach it. Okay. So I just suggest if we're bound by them, so you've preserved it, what's the second argument? Well, the second argument then, Your Honor, goes back to what is a crime of — something I've talked about originally. The crime of violence is defined by section 16a. Now, as this Court has already discussed and as the Supreme Court has discussed, the only way 924C will kick in is if there is an underlying crime of violence. Now, with the Johnson courts, Your Honor, or with the Johnson decisions, I should say, we've come to the conclusion, or the courts are still grappling with this, what is the use of — what is a crime of violence? The jury charge that was presented to the jury in the case of Sonny Floyd Purvis included the possible definition of intimidation. Now, intimidation, although this Court has found otherwise and although other circuits are still discussing it, however, intimidation can mean many things. Intimidation does not have to mean that somebody has a gun and is pointing it at somebody. Intimidation does not have to mean that somebody is in physical fear of their life. Intimidation can't — Right. But again, once you say this Court has found otherwise, that's the end of the story for us, isn't it? Well, Your Honor, respectfully, this Court can always revisit the issue. Well, no, we can't revisit the issue. Well, Your Honor, perhaps I've stated that incorrectly. The Supreme Court is still grappling with this. Okay. Now, when we talk about the crime of violence, we're talking about, in this case, the jury charge that was presented to the jury. And I need to back up for just one second, although I've discussed this in my brief. The jury charge was parsed into two separate questions. The first question determined the guilt or innocence of Mr. Sonny Floyd Purvis for both counts of bank robbery. The second part of both counts asked if you find that the defendant brandished a firearm for Part 1. The second part asked did you find that the defendant used a firearm for — regarding Part 2. Now, that was not the case — the jury did not find that, Your Honor. Although the jury found that Mr. Sonny Floyd Purvis was guilty as to counts 1, 2, 3, and 4, they did not — when the issue was parsed, they did not find that Mr. Purvis either brandished the firearm for counts 1 and 3 or discharged the firearm for counts 2 and 4. As such, Your Honors, this led the jury, in my opinion, in the opinion of other counsel, to make perhaps an erroneous conclusion. They were not presented with enough facts to be able to determine the true guilt or innocence of Sonny Floyd Purvis because this jury charge itself was confusing, which is why I stated in my briefs, Your Honors, when you look at this as a whole, the issue of the jury was — the jury should have decided — the evidence, rather, should have decided as a trigger of fact whether Mr. — if Mr. Purvis did not brandish the firearm as to counts 1 and 3, should he be not guilty for counts 1 and 3? Second, if Mr. Purvis did not discharge the firearm as to counts 2 and 4, should he have been found not guilty for counts 2 and 4 as well? That was not presented to the jury. The jury charge itself directly read — and Your Honors are aware of this from the Record on Appeal — that Judge Lake simply instructed the jury that, I instruct you, this is a crime of violence. As such, the jury was left with no other alternative simply to find that it was a crime of violence. As such, this bumped my client's total sentencing to, I believe, 485 months. A great portion of that which was taken up by the 300 months, which is mandatory because of Section 924C. And so, Your Honors, what I'm presenting to the Court today is the issue of the jury charge when taken in conjunction with the recent Supreme Court decisions with the Maya cases. This presented, respectfully, an unconstitutional violation of my client's rights when the jury decided his guilt or innocence. The jury should have been allowed to determine whether or not Mr. Sonny Floyd Purvis, in addition to actually committing the robberies — let me back up for a minute, Your Honors. The jury should have been allowed to determine, based on a statement from Judge Lake, that if Mr. Purvis brandished the firearm and attempted the bank robbery, or did the bank robbery, he would be subject to the mandatory minimum of 5 years and 25 years, respectfully. They were not instructed as such. And as such, although the jury charge did — I'll scratch that — although the jury did find them guilty, my client guilty as it accounts 1 through 4, it was parsed in such a way that they were not allowed to determine the guilt or innocence of parts  of the crime. As such, this represented an unconstitutional violation of my client's — sorry to scratch that, Your Honor — of my client's — let me back up for a minute — for the jury to truly analyze this case. The jury was supposed to be the trigger of fact in this case. It was not the trigger of fact. What ended up happening was that Judge Lake, with respect to Judge Lake, overstepped his bounds and simply declared that these were crimes of violence and the jury was not allowed to make this decision. Thank you. Thank you, Counsel. Thank you, Your Honor. May it please the Court. Loretta Berry for the United States. As to Gray's mental competency, I want to point out for the Court that the Moore case upon which defense counsel relies does not apply to this case because that case was examining mental competency for purposes of death penalty eligibility under the Supreme Court standards of Hill and Atkins, in contrast to what we have here, which is evaluating mental competency for purposes of standing trial under a statute, under 4241. And there's two parts. The first part is, does an intellectual deficit, a mental deficit, exist, looking at different IQ tests? And if the district court determines that a deficit exists, then he proceeds on to the second step, which is looking at adaptive functioning and adaptive skills. And those are, can the defendant understand the nature of the charges? Can the defendant assist defense counsel? And in this case, Judge Lake was not clearly arbitrary or unreasonable in concluding that at the very first step, there was no intellectual deficit. But all the objective tests showed intellectual disability. All of the objective tests, in agreement by all of the testifying experts, was that he was malingering. Therefore, the tests were invalid. Well, but I thought your expert said that she agreed with the defense expert that if there is malingering, there are further tests that can adjust to negate the malingering behavior. There are further tests. That wasn't a 100 percent positive, Your Honor. In fact, the court that ---- I'm not saying what's 100 percent positive. I thought your expert agreed that you can do the very test that Chaffetz did to compensate for malingering. Did your expert say, yes, those adjustments are possible to do? She said those were possible, but she did not agree with them because ---- and even Chaffetz said that he conceded at the sentencing hearing that even his own theoretical, statistical approach to counteract malingering was still susceptible to, to, and I quote, his proven ability to malinger. So what Dr. Bella did, her approach was not theoretical, Your Honor. It was practical. And what she did in her 300 ---- experience of 300 competency exams and in her spending 30 full days evaluating Gray, she looked at phone conversations. She looked at, at interactions with other inmates in a noncontrolled environment. She determined that he was competent, that he was able to understand his environment. Well, now, you said several things. Noncontrolled environment. The dominoes playing is occurring in prison. That's a controlled environment, right? Right. But that wasn't a controlled environment in terms of a sit-down evaluation with a psychiatrist in, in terms of that sort of a setting, I think is what ---- Has any court stated what you started with, which is Eighth Amendment objective assessments, Moore Hall, are not applicable to 4241? No, no court has said that. But I would like to point out that in Moore, the Brumfield v. Cain case is also a Supreme Court case. And it points out, though, that if you look at that case where there's an overlap between the intellectual deficits, between the Eighth Amendment cases and, and this test under the statute, there the Court said that it was very ---- the Court said that once the experts ruled out malingering, then they proceeded on to the remaining parts of the Atkins test. So here ---- You're saying even if we do import it, you still win. Exactly. Because you go to adaptive observations. And that's under the statute. But, but, but is that necessarily true? Because if we import it, we also import the restrictions the Supreme Court has stated as to adaptive behavior. They say don't focus on positives like he can play dominoes or he can have a nice phone call. But again ---- Focus on what his deficits are. And where do we have the district court making a finding of deficits? Well, again, Your Honor, I would like to point out that those line of cases, though ---- No, you're saying they don't apply. But I thought you also said that if they do ---- I'm saying if they do, though, I'm ---- if, if, if you were to do that, and there's not a case that says that, but if, if the Court were to see the overlap in the The only reason they went on to the further test was because there was no malingering. So that implies that if you have malingering, then you don't need to go end of story. I think that there's a case that says if malingers, that means the person's smart enough to understand counsel and proceedings. I have not found a case that says that, Your Honor. I'm just reading it from Brownfield. It's a little bit of a tricky situation. It, it is a little tricky, Your Honor. However, I would point out, though, that under the statute, the district court did exactly what he was supposed to do because the statute specifically directs the district court to look to adaptive functioning, to look to adaptive skill. And at the first part of the test, all of the experts agreed that he was malingering, that the tests were invalid. So at that point, under the statute, Judge Lake doesn't have to go any further. However, being the conscientious district court judge that he was, just like the district court judge in Porter was, in this, in this Court's 2018 opinion, he decided to err on the side of caution and proceeded on to the second step, which was to look at adaptive skills, to look at adaptive functioning, which, in that case, you had the two divergent views of Dr. Bella and Dr. Chaffetz. He made the credibility determination to choose Dr. Bella's approach over Dr. Chaffetz's, who even at... Did he say it was a credibility call? He, he, he said that he credited in his factual findings, Your Honor. What, in your opinion, is the best evidence throughout the record that this man could understand the proceedings and communicate to his counsel? What, what's your view as to the best proof of that? The best proof of that is, well, the first of all is, is the evidence malingering. Second of all, his experience with the criminal justice system, his ability to have understood from all of the, the extensive criminal history that he has, the phone conversations that were listed... Listing them all, but you think the best is anyone that can malinger automatically survives 42-41? I believe that anyone under the, under the statute, you don't need to go further if there's no mental deficit, and that's what this Court's case... They all say he's got a mental deficit. What... There's no objective assessment anywhere in this record saying the guy isn't mentally disabled, unless I'm wrong. No, there's not. He's, he's malingering. Okay, so he looks to me like he's got an intellectual disability, but that doesn't necessarily answer whether he's competent to understand the proceedings in his counsel, and so that's why I'm asking you, where do we see competency? And, and I, I can accept that it's malingering. There's no case that says that's always the answer. Right. But you're saying the judge went beyond that anyway and, and relied on an expert and credited an expert who said, put it all together and he's smart. The best evidence that I would point to, Your Honor, would be the detail of the phone conversations that were pointed out in the very thorough 14 page memorandum of Judge Lake, where he goes through not just basic legal concepts. He's talking about, um, defense witnesses that he would have, and not just, I didn't do it or I don't understand why I'm here, but very specific things, Your Honor, and that's my best evidence. I also want to point out that as to the armed bank robbery, this court has clearly held that 924C3A under Brewer, it is, the armed bank robbery is a crime of violence under the Elements Clause. I also want to point out that the verdict form did comply with the pattern jury charge. The jury did find that the defendant was guilty as a first step, and then after that, under count one, found that there was no brandishing. Therefore, the five year would apply. And as to count four, the court found no discharge of the firearm. So the court complied with the pattern jury charge in that case, and the issue is foreclosed in this circuit. And in fact, as I pointed out in my 28-J letter, every single circuit that has held that bank robbery by intimidation qualifies as a crime of violence. If there's no further questions, I respectfully request that the court affirm the judgment. Well, if they were to win in terms of 4241, would the government be able to try to restore competency? If they were to win in 4241, I suppose it would have to go back to the court again, I suppose. I suppose there would be a whole other round of competency, and there would be a new trial, I would assume. Because usually under the Eighth Amendment jurisprudence, there's really no chance to restore competency to be executed. Correct. But there is usually under 4241. That's correct. The other thing, there was reference to a fourth report. A fourth report. What does the record say about the fourth report's conclusions as to competency? So there were four reports. The first one was just an initial evaluation. The second report was to Neal Williams. She did not testify. And she actually didn't make a malingering determination, but she said that the results were invalid because he was not giving good effort, which in my mind is, well, to me, I believe that that's similar to malingering. The tests were invalid because he wasn't giving good effort. The first report is not really relevant at all. No. There was no evaluation there done. No, Your Honor. And, you know, all of the tests, both tests, both experts agreed that there was just no question he was malingering given he spent five minutes on a test that should have taken 45, a pattern of incorrect answers. Thank you. One question I have. Yes. This question of malingering is just very interesting to me, particularly in this context when we're talking about an intellectual disability. And you can help me out if any of the reports of the doctors spoke to this. And this is my general question. I'm not saying that you have the answer or that it was actually an answer in the record. But folks with intellectual disability and those without intellectual disability, whether it's an ultimate conclusion or everyone agrees, seems to me that they can malinger, if you understand what I'm saying. And particularly if you're looking at the adaptive environment like prison, where someone with an intellectual disability may be influenced. We all know that prisoners talk to one another and they come up with ways to try to get out of jail. I mean, it's just a fact of life. And there's something very interesting to me about the fact, about the things, and I know that there are tests that you can go back and try to negate it in that sort of thing. But to me, it's just not necessarily, yes, it's a factor, but it's not a really strong one in my mind, especially when you're talking about all these different doctors who go through all these different types of analysis. If they were all performing the same tests and they had different conclusions, I think I'd be more prone to accept what the importance of the testing is when you do those evaluations. So it's just an interesting thing to me. I don't know if there's anything in the record where anyone even addressed that type of thing. Well, I think, Your Honor, to answer that question as best I can, to me, it seems that Judge Lake was concerned that the end-all and be-all isn't just malingering. And he addressed that concern by going on and looking specifically at the second part of the test, which was what are the offsets that we do for when someone shows malingering. And so what he did is he was forced with two different approaches to look at how to deal with the malingering. And so one expert used theoretical, statistical approach. That was Dr. Chaffetz. And the other one looked at how he behaves in a practical setting in an environment where, what does he say on his phone conversations? How does he interact with other inmates? So I think if Judge Lake had just stopped at malingering, that I could understand your concern, Your Honor. But he went on and looked at the, and was very thoughtful and very conscientious in doing so and looking at the other parts of the test that he really didn't need to under the statute. And the Supreme Court has held that the District Court is entitled to choose between two different approaches. And that's what the District Court did in choosing the government's, the witnesses' approach. I hope I was able to answer it as best as possible, Your Honor. Thank you. I think that Judge Brown got right to the heart of part of what's so confusing about this case. This is a two-step test. All of the experts are agreed on the first step. Gray suffers from a mental defect or deficit. Chaffetz determined that by looking at what his scores would be, even discounting for the effects of the malingering. Dr. Bella said these are a waste of time. Dr. Scores don't mean anything because he's beaten them. Dr. Bella believed that it was a waste of time. And then at, when she was cross-examinationed, she specifically stated that Dr. Chaffetz's method provided a reliable estimate of Gray's actual IQ. What's your argument there? I thought on the opening argument you said you weren't saying Dr. Bella's own analysis was invalid or she couldn't look at observations. You say there's reversible error because the District Court didn't articulate reasons. Is your argument instead that her analysis is legally invalid? No. The reversible error that the District Court did not sufficiently explain its reasoning is for step two. On step one, the evidence is uncontroverted that there is a mental defect or deficit. We then proceed to the question of whether or not that affects his ability to assist his counsel and understand the proceedings that are going on. It is proper for the experts and for the court to take malingering into account in that situation. But we also have to look at what the District Court specifically said. Judge Lake specifically looked only at the phone calls when he was addressing step two. I thought he looked at criminal history too and your client was an organizer, coordinator in the offense. Aren't those relevant? Those are relevant. But when you look at Judge Lake's memorandum, all he addresses are the phone calls. And the phone calls were made in an institutional setting. Moore warns us, we have to look at the cognitive deficits and whether or not those impair, whether or not those affect what we're looking for. What we're looking for here is whether or not he can assist his counsel and whether he understands the proceedings against him. But all of the evidence that Dr. Bella relied on and everything that Judge Lake relied on when looking at Dr. Bella's report is evidence from Gray's time in an institution. It is not unusual for someone with a subnormal IQ to be able to respond well to the rigors and firm processes of an institutional setting. Being able to function with the social norms in prison does not mean that you can help your lawyer defend your case or that you understand what's actually going on once you get into the court. The phone calls weren't that rigorous day-to-day setting. That's him talking with people outside about his case. That is him talking with people outside about his case. But a close examination of the phone calls reveals only a very basic understanding of the criminal justice system. That is one of the inferences that Judge Lake was required to explain. Why is he drawing the inference that he understands what is going on in his case and can help his lawyer as opposed to a general understanding of the system. Thank you. I realize I'm out of time, Your Honor, but if I can very briefly address what happens next. That's a whole new argument. And they don't have an opportunity to respond to it. So I think the better answer is you shouldn't. I'll submit it in a 28-J letter. No, no, no. We're not inviting a 28-J letter. That's not an intervening new fact. Thank you, Counsel. Thank you. Once again, may it please the Court. Your Honors, once again, the government is simply repeating their arguments that the Brewer case shuts down whether or not it is a crime of violence, whether or not armed bank robbery is a crime of violence. But once again, Your Honor, Your Honors, the issue here is this case was heard and decided before the Johnson cases and the DiMaio cases came out of the Supreme Court. This has now opened up a new field of exploration for both this circuit and other circuits. If we are to believe, Your Honors, that 16B is void for vagueness because it simply leaves open too much interpretation, which I believe is the Supreme Court's holding in these matters, then we simply have to look again at the jury charge. The jury charge, which is, in my opinion, the crux of this entire situation, is that the jury was basically, for lack of a better term, pigeonholed into making a decision that they weren't entirely either comfortable with or knew anything about. When a sitting federal judge, in this case Judge Lake with all due respect, informs the jury that this is a crime of violence, they have nowhere else to go. And this, I believe, is one of the issues that was addressed in the Johnson and DiMaio cases. Now, I think it's indicative, Your Honors, that when the jury was offered a case to make the determination as to whether or not Mr. Purvis, Mr. Sonny Floyd Purvis, actually discharged the firearm or brandished the firearm, they chose the negative. They came to the conclusion that it was not possible or they took the decision that Mr. Purvis did not discharge or brandish the firearm. This alone shows that there was a disconnect between the actual terms of the jury charge and what the jury was thinking. Whether or not it was a crime of violence, once again, based on a jury charge which existed before the Johnson and DiMaio cases, brings this case out into the open once again, Your Honor. That we simply have to examine, once again, if this is a crime of violence. And if so, did the jury receive improper instructions? Now, the government states that every single court has stated that bank robbery is a crime of violence. Well, Your Honors, once again, with respect, that skirts the issue. The question is not, is bank robbery a crime of violence? The question is, the way the bank robbery jury charge was given to the jury, did that make it a crime of violence because of the use of intimidation? The jury was not left to determine whether or not Mr. Purvis intimidated or brandished a gun or anything. The jury, when looking at the jury charge, simply could only conclude based on Judge Lake's instructions that it was a crime of violence. And this led them down the inevitable path of deciding that he was guilty. But once again, when given the choice as to other factors, the jury decided on the negative. I think this alone makes this case stand out. Thank you, Your Honors. Both of you were court appointed. Thank you very much. And thank you also for your public service.